## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **ERIC BREINES AND ANDREW PERRONG,** individually, and on behalf of all others similarly situated, | Case No. 3:19-cv-00353-BJD-PDB |
| *Plaintiffs*, | |
| *v.* | |
| **PRO CUSTOM SOLAR LLC, D/B/A MOMENTUM SOLAR**, a New Jersey company, | |
| *Defendant.* | |

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

The Court should deny Defendant Momentum Solar's motion to dismiss because Plaintiffs state claims under the Telephone Consumer Protection Act's autodialer, prerecorded voice, and do not call list provisions.

First, Plaintiffs sufficiently allege that they were contacted directly by Momentum Solar. Among other allegations, Plaintiff Breines specifically states that the individual that called "identified themselves as Momentum Solar." Plaintiff Perrong similarly alleges that, although there was no company identification during the first call he received, Momentum Solar identified itself during subsequent calls during which Momentum Solar explicitly referenced unique identification Plaintiff Perrong provided during the initial call he received specifically for the purpose of identifying the caller during any follow up calls.  Plaintiffs are not required to make further allegations regarding the nature of the parties' interactions or the involvement of third parties in Momentum Solar's telemarketing scheme to demonstrate Momentum Solar's prospective liability.

Second, Plaintiffs sufficiently allege receiving prerecorded and autodialed calls.  With

regard to the use of a prerecorded message, Plaintiff Perrong unequivocally alleges that during the first call he received from Momentum Solar he heard a prerecorded voice message advertising solar services.  With regard to the use of an autodialer, both Plaintiffs allege facts and circumstances surrounding the calls they received from Momentum Solar sufficient to raise a plausible inference that an autodialer was used, including that the calls were commercial and generic, that they were made without consent, that they were received from a "spoofed" number that was not in service, that there was a long pause and/or popping sound at the start of the call, and that the calls were incessant.  In fact, the Plaintiff Perrong explicitly names the dialer he believes was used based on the type of sound he heard when he answered the phone. A plaintiff alleging use of an autodialer is not expected to know or allege anything more regarding the technical capacity of the equipment used to make the calls, and in fact should be permitted to proceed in discovery regarding the dialing system used even if they allege far less.

Third, Plaintiff Perrong sufficiently alleges a claim arising from Momentum Solar's failure to implement sufficient procedures for maintaining an internal list of consumers who request not to be called for which the TCPA specifically provides a private right of action. Momentum Solar did not produce a copy of its internal do not call policy at Plaintiff Perrong's request and continued to call Plaintiff Perrong notwithstanding his requests that the calls stop, including an e-mail he sent to more than a half-dozen Momentum Solar e-mail addresses.  The fact that Momentum Solar stopped calling Plaintiff Perrong less than 30 days after he first requested not to be called does not preclude liability for failure to maintain sufficient internal do not call related procedures.  Ultimately, it is a question for the trier of fact whether the multiple week delay in ceasing calls to Plaintiff Perrong – *during which time Momentum Solar called him an additional 20 times* – was reasonable, and whether, as a result, Momentum Solar's policies were sufficient.

The Court should therefore deny Momentum Solar's motion in total.

## I.    FACTS

Momentum Solar sells and installs solar panels, and uses telemarketing to promote their product and service offerings.  Amended Complaint (D.E. 13) at ¶¶ 33-34.

### a.   Momentum Solar's Calls to Plaintiff Perrong

On February 28, 2019, Mr. Perrong received a pre-recorded call from (215) 876-1804. *Id*. at ¶ 42.  This Caller ID number was "spoofed," as that number is not in service.  *Id*. at ¶¶ 43-44.  Mr. Perrong answered the call and heard a pre-recorded voice at the beginning of the call advertise solar services.  *Id*. at ¶¶ 45-46.  Because the company was not identified in the message, Mr. Perrong responded to the pre-recorded voice and provided the name "Harold Perrong" and an old address where he had resided.  *Id*. at ¶¶ 47-48.

Confirming the pre-recorded call, Momentum Solar followed up with Mr. Perrong with a telemarketing call on March 11, 2019 based on the February 28, 2019 pre-recorded call asking for "Harold Perrong," referencing the old address that Mr. Perrong had provided.  *Id*. at ¶ 49. Mr. Perrong confirmed Momentum Solar's identity by engaging their services and then canceling the appointment.  *Id*. at ¶¶ 50-51.

Mr. Perrong also sent an e-mail to Momentum on that same day asking why he had been contacted in the first place, revoking any purported consent they had, and asking for a copy of Momentum's Internal Do Not Call Policy.  *Id*. at ¶¶ 52-54.  Momentum Solar never provided Mr. Perrong with a copy of the policy.  *Id*. at ¶ 55.  Momentum Solar also continued to call Plaintiff Perrong another 20 times over the next few weeks before finally stopping.  *Id*. at ¶ 56.

All of the calls Plaintiff Perrong received were made with the same or similar dialing system.  *Id*. at ¶ 58.  The Plaintiff could identify the dialing system on the calls that were answered by a silence and others by silence and a "popping" noise immediately when the call was answered, which is a noise most often associated with a ViciDial predictive dialing system,

and is a copyrighted sound owned by ViciDial. *Id*. at ¶¶ 59, 62. The calls would only transfer after a long delay of several seconds, often with Plaintiff saying "Hello" multiple times. *Id*. at 60.

### b. Momentum Solar's calls to Plaintiff Breines

On October 30, 2018 Plaintiff Breines received an unsolicited telemarketing call from (908) 905-0861. *Id*. at ¶ 69. Upon information and belief, that Caller ID number is "spoofed" and is not in service. *Id*. at ¶ 70. In other words, the Defendant manipulated the dialing system to use a Caller ID number that was local to the Plaintiff in hopes that he would answer. *Id*. Mr. Breines answered the call and noted a significant pause before being connected to an individual who identified themselves as with Momentum. *Id*. at ¶¶ 71-72. Confirming the call, Momentum Solar followed up with Mr. Breines with a series of call and text message appointment reminders. *Id*. at ¶ 74.

Based on these calls, Plaintiffs assert claims under the TCPA's prerecorded voice, autodialer, and do not call list provisions.

## II. The Plaintiffs both Plainly Allege They Were Contacted Directly by Momentum Solar.

The TCPA prohibits any person from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice... to any telephone number assigned to a... cellular telephone service." 47 U.S.C. § 227 (b)(1)(A)(iii). Similarly, 47 U.S.C. § 227 (b)(1)(B) makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." Mr. Breines has a claim under 47 U.S.C. § 227 (b)(1)(A)(iii) and one of Mr. Perrong's claim is under 47 U.S.C. § 227 (b)(1)(B).

The Plaintiffs have plainly alleged that Momentum directly made the calls at issue. In

4

fact, the Plaintiffs factual allegations begin with the following statement:

> Momentum Solar sells and installs solar panels. **_Momentum Solar uses telemarketing to promote its products._** Recipients of these calls, including Plaintiffs, did not consent to receive them. **_Momentum Solar's telemarketing efforts include the use of predictive dialers and pre-recorded calls._**
>
> **_The Defendant uses this equipment_** because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone for autodialed calls or who respond to the prerecorded voice call. Through this method, the Defendant shifts the burden of wasted time to the consumers it calls with unsolicited messages.

*See* Amended Complaint (D.E. 13) at ¶¶ 33-37 (emphasis added).

With respect to Mr. Breines specifically, the Amended Complaint alleges, "Plaintiff Breines received an unsolicited telemarketing call…Mr. Breines answered the call [and] noted a significant pause before being connected to an individual who **_identified themselves as with Momentum_**." *Id.* at ¶¶ 69-72 (emphasis added). Mr. Breines allegations continue, "[c]onfirming the call, Momentum Solar followed up with Mr. Breines with a series of call and text message appointment reminders." *Id.* at ¶ 74.

Mr. Perrong makes similarly clear allegations, alleging that he received a telemarketing call with a pre-recorded message on February 28, 2019. *Id.* at ¶¶ 41-42. However, on Mr. Perrong's call there was no live person or actual company identified and instead he provided unique identifying information to confirm who the company was who made the call if they reached back out to him. *Id.* at ¶ 48. Indeed, Momentum Solar contacted Mr. Perrong again using that uniquely provided information. *Id.* at ¶ 49. Mr. Perrong then wrote to *nine* different e-mail addresses at Momentum, including the president, CEO, general counsel, head of digital marketing, and VP of operations, inquiring why they had contacted him in the first place and requesting a copy of their Internal Do Not Call Policy. *Id.* at ¶ 54. While Mr. Perrong did not receive a copy of the Do Not Call Policy that he is statutorily entitled to, he did receive another 20 telemarketing calls from Momentum over the next month. *Id.* at ¶ 55-6. This is inconsistent

with Momentum's assertion that the Plaintiffs "merely allege Momentum 'followed up' with each of them". *See* Motion (D.E. 24) at p. 9. The Plaintiffs have plainly alleged that the first and only actual company identified on these calls was Momentum.

The cases cited by Momentum do not overcome these plain allegations. First, in *Vessal v. Alarm.com*, No. 17 C 2188, 2017 U.S. Dist. LEXIS 172648, at *6-7 (N.D. Ill. Oct. 18, 2017), the Plaintiff did not even attempt to plead direct liability, "[t]here are no allegations in the complaint, and Vessal does not argue that Alarm.com initiated the phone calls in the sense of taking the steps to physically place a call. Accordingly, plaintiff has not alleged facts supporting direct liability under the TCPA." Here, both Plaintiffs make plain allegations connecting Momentum's conduct to the acts of physically placing the phone calls. Similarly, in *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765 (N.D. Ill. 2014), the plaintiffs were explicitly pleading vicarious liability, "[t]he seven plaintiffs in this consolidated action complain of receiving similar unlawful telemarketing calls from Variable." *Id.* at 769.[1]  And in *Gulden v. Consol. World Travel Inc.,* No. CV-16-01113-PHX-DJH, 2017 U.S. Dist. LEXIS 23350 (D. Ariz. Feb. 15, 2017), a *pro se* plaintiff filed an eleven count complaint regarding four solicitation calls with the *only statement regarding the Defendant's involvement* being "Defendant, Defendant's agents or parties acting on behalf of the Defendant initiated the alleged calls." *Id.* at *5. Unlike *Gulden*, here the Plaintiffs have detailed the interactions between the parties and the nature of the repeated contacts.

Accordingly, Plaintiffs sufficiently allege receiving TCPA violative calls directly from Defendant.

---

[1] Notably, the motion was denied with respect to State Farm's alleged vicarious liability.

### III.   Plaintiffs Sufficiently Plead Facts Supporting the Conclusion that Defendant's Calls Were Made with a Pre-Recorded Voice and/or an ATDS.

First, the Amended Complaint clearly alleges that Plaintiff Perrong received a pre-recorded voice call on February 28, 2019. Amended Complaint at ¶ 42.  Plaintiff Perrong answered the call and heard a pre-recorded voice at the beginning of the call advertise solar services.  *Id*.  Mr. Perrong then responded to the message, in which the company was not identified, and subsequently provided unique identifying information including name and address, which he provided in order to sufficiently identify the company making the call.  *Id*. at ¶¶ 45-48. Momentum attempts to distort Mr. Perrong's allegations by claiming that he must have been speaking with a live person at some point and that means the entire call was live. *See* Motion at p. 14. That's not the case and ignores the plain allegations "Mr. Perrong heard a ***pre-recorded voice*** at the beginning of the call advertise solar services. Because the company was not identified in the message, Mr. Perrong responded to the ***pre-recorded voice***." Amended Complaint at ¶ 46-7.

Second, to state a claim under the Telephone Consumer Protection Act's autodialer provision, 47 U.S.C. § 227(b)(1)(A), a plaintiff must plausibly allege, among other things, that he was called on his cellular telephone number using an autodialer.  At this stage of the proceedings, a TCPA plaintiff sufficiently alleges that calls were made using an autodialer by identifying "circumstances surrounding" the calls  that "create a plausible inference of autodialing," including:  their "commercial" content; that multiple calls were made to the same recipient; and that they were made without the recipient's consent.  *See Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 U.S. Dist. LEXIS 159070, at *12 (S.D. Fla. Nov. 9, 2015) ("Together, these allegations are more than sufficient to plead the autodialer element of Keim's TCPA claim."); *see Scott v. 360 Mortg. Grp., LLC*, No. 17-cv-61055, 2017 U.S. Dist. LEXIS 207513, at *17 (S.D. Fla. Dec. 14, 2017) ("Plaintiffs alleging the use of a particular type

of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more."); *Smith v. Royal Bahamas Cruise Line*, No. 14-cv-03462, 2016 U.S. Dist. LEXIS 6204, at *10-12 (N.D. Ill. Jan. 20, 2016) (finding that several calls to the same recipient supports the inference that the defendant used an autodialer); *Zeidel v. Nat'l Gas & Elec., Ltd. Liab. Co.*, No. 18 CV 06792, 2019 U.S. Dist. LEXIS 83988, at *7 (N.D. Ill. May 17, 2019) (listing factors that can suggest the use of an ATDS, including use of "spoofed" numbers and generic, promotional content of the call).

This is because "it is unreasonable to require a plaintiff in a TCPA complaint, without the benefit of discovery, to elaborate on the specific technical details of a defendant's alleged ATDS …." *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 U.S. Dist. LEXIS 178558, at *10-11 (N.D. Ill. Dec. 18, 2012). But "[i]t is not unreasonable, however, to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were … delivered via the ATDS." *Id.* at *11. "This approach does not burden plaintiffs unduly by requiring pleading of technical details impossible to uncover without discovery …." *Id.*

Here, Plaintiff Breines' allegations alone are sufficient to state a claim that Defendant made a call using an ATDS, including that (1) the call was commercial and generic in nature, (2) it was made without Plaintiff's consent, (3) the Caller ID number is "spoofed" and is not in service, (4) Plaintiff Breines noted a significant pause before being connected to an individual identifying themselves as with Momentum, and (5) Defendant followed up the initial call with a series of calls and text messages. Amended Complaint ¶¶ 69-74. Moreover, the description of Plaintiff Perrong's calls further supports the conclusion that Defendant uses an ATDS system to

make marketing calls, including to Plaintiff Breines.  Specifically, and consistent with Plaintiff Breines' allegations, Plaintiff Perrong alleges that on answering the Defendant's calls, a silence followed or a silence followed by a "popping" noise, which is indicative of the use of the ViciDial predictive dialing system, an ATDS for purposes of the TCPA.  *Id.* at ¶¶ 56-64.

The Amended Complaint alleges at least six different facts supporting the conclusion at this stage of the litigation that Momentum Solar used an autodialer to make unsolicited calls, including naming the specific dialer that one of the Plaintiffs believe was used.  Therefore, Plaintiff "meet[s] his 'obligation to provide the grounds of his entitlement to relief, and provide sufficient notice to Defendant to answer the complaint.'"  *Scott*, 2017 U.S. Dist. LEXIS 207513, at *17-18.  At the pleading stage, Plaintiff is not expected to know more about the dialer used to call him.  *See id.*

IV.     **The Amended Complaint Sufficiently Pleads a Violation of the TCPA's Internal DNC Regulations.**

Courts across the country have held that the 47 U.S.C. § 227(c)(5) provides a private right of action for claims premised on violations of the TCPA implementing regulations promulgated pursuant to 47 U.S.C. §§ 227(c)(1)-(4), including specifically 47 CFR § 64.1200(d). *E.g., Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 449 (6th Cir. 2011) (holding that 47 CFR § 64.1200(d) implements 47 U.S.C. § 227(c) and that 47 U.S.C. § 227(c)(5) provides a private right of action for violation of 47 CFR § 64.1200(d)); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014) (finding an alleged violation of 47 CFR § 64.1200(d) sufficient to support claim a under 47 U.S.C. § 227(c)(5)).  This is because "[w]hile many portions of 47 C.F.R. § 64.1200 could arguably be attributed to more than one subsection of the TCPA, … the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s mandate to adopt adequate do-not-call regulations." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1200-01 (M.D. Tenn. 2017); *see*

9

*Simmons v. Charter Communs., Inc.*, 222 F. Supp. 3d 121, 130-31 (D. Conn. 2016) ("A violation

of subsection (d) gives rise to TCPA liability under section 227(c)(5).").

The Amended Complaint adequately pleads the regulatory and statutory basis for alleging

violations of the internal do-not-call requirements established by the FCC implementing

regulations. D.E. 13 at ¶¶ 17-27.  FCC regulation provides that:

> No person or entity shall initiate any call for telemarketing purposes to a
> residential telephone subscriber unless such person or entity has instituted
> procedures for maintaining a list of persons who request not to receive
> telemarketing calls made by or on behalf of that person or entity. The procedures
> instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes
> must have a written policy, available upon demand, for maintaining a do-not-call
> list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any
> aspect of telemarketing must be informed and trained in the existence and use of
> the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a
> call for telemarketing purposes (or on whose behalf such a call is made) receives a
> request from a residential telephone subscriber not to receive calls from that
> person or entity, the person or entity must record the request and place the
> subscriber's name, if provided, and telephone number on the do-not-call list at the
> time the request is made. Persons or entities making calls for telemarketing
> purposes (or on whose behalf such calls are made) must honor a residential
> subscriber's do-not-call request within a reasonable time from the date such
> request is made. This period may not exceed thirty days from the date of such
> request. If such requests are recorded or maintained by a party other than the
> person or entity on whose behalf the telemarketing call is made, the person or
> entity on whose behalf the telemarketing call is made will be liable for any
> failures to honor the do-not-call request. A person or entity making a call for
> telemarketing purposes must obtain a consumer's prior express permission to
> share or forward the consumer's request not to be called to a party other than the
> person or entity on whose behalf a telemarketing call is made or an affiliated
> entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for
> telemarketing purposes must provide the called party with the name of the
> individual caller, the name of the person or entity on whose behalf the call is
> being made, and a telephone number or address at which the person or entity may
> be contacted. The telephone number provided may not be a 900 number or any
> other number for which charges exceed local or long distance transmission

charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. §§ 64.1200(d)(1)-(6).  "This regulation was promulgated under the Telephone Consumer Protection Act, *47 U.S.C. § 227, et seq.*, which explicitly requires the Federal Communication Commission to issue these regulations, and explicitly provides for a private right of action for violation of such regulations." *Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 U.S. Dist. LEXIS 175642, at \*15 (E.D. Pa. Dec. 19, 2016) (Denying motion to dismiss, finding that defendant's argument that Section 227(b) does not extend to internal do-not call requirements is "meritless" and holding that plaintiff adequately pled an internal do-not-call claim).

The Amended Complaint adequately pleads violations of the internal do-not-call requirements by alleging, without limitation:

- Plaintiff Perrong and members of the putative internal DNC class are residential telephone subscribers. D.E. 13 at ¶¶ 38, 39, 41, 76.

- Defendant placed two or more telemarketing calls to Plaintiff's and Internal Class Members' telephone numbers. D.E. 13 at ¶¶ 42, 49, 56, 57, 76, 93.

- Defendant did so despite not having a written policy pertaining to "do not call" requests. D.E. 13 at ¶¶ 52-55, 94.

- Defendant did so despite not having such a policy available "upon demand." D.E. 13 at ¶¶ 52-55, 95.

- Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list. D.E. 13 at ¶¶ 52-56, 96.

- Defendant did so despite not recording or honoring "do not call" requests. D.E. 13 at ¶¶ 52-56, 97.

Accordingly, the Amended Complaint alleges multiple ways in which Defendant fails to meet the minimum standard for procedures for maintaining a list of persons who request not to receive telemarketing calls.

Defendant's motion to dismiss merely quibbles with the sufficiency of Plaintiff's allegation that it failed to honor Plaintiff Perrong's request to not be called because it stopped calling him within 30 days of his stop request.  Defendant's argument misconstrues the regulatory language and invites the Court to erroneously interpret Section 64.1200(d)(3). Whether Defendant honored Plaintiff Perrong's request within a "reasonable time" is a factual determination that should not be determined by the Court at this juncture, as multiple courts have held. Section 64.1200(d)(3) requires that residential subscriber's do-not-call requests must be honored "within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request." 47 C.F.R. § 64.1200(d)(3).  This language provides a ceiling for what can be interpreted as constituting "reasonable time."  It does not establish a floor.  In other words, the regulation establishes only that calls over thirty days after a request not to call are per se unreasonable; not the converse.  There is no safe harbor for calls made within thirty days of a request to stop calling. *Nece v. Quicken Loans, Inc.*, No. 8:16-cv-2605-T-23CPT, 2018 U.S. Dist. LEXIS 42356, at *18 (M.D. Fla. Mar. 15, 2018) (denying motion for summary judgement and finding that what constitutes a "reasonable time" for

honoring internal do-not-call requests is an issue of fact); *Martin v. Comcast Corp.*, No. 12 C

6421, 2013 U.S. Dist. LEXIS 169221, at *19 (N.D. Ill. Nov. 26, 2013) (denying motion to

dismiss, explaining that whether 10 days is reasonable "should be addressed after the facts have

been pinned down through discovery").  The Amended Complaint sufficiently pleads the third

cause of action based on violation of the internal do-not-call requirements.

## V.      CONCLUSION

Plaintiffs sufficiently state TCPA prerecorded voice, autodialer, and do not call list

claims.  The Court should therefore deny Momentum Solar's motion to dismiss.

                                        Respectfully Submitted,

Dated: June 21, 2019                    */s/ Avi Kaufman*
                                        Avi R. Kaufman (FL Bar no. 84382)
                                        kaufman@kaufmanpa.com
                                        Rachel E. Kaufman (FL Bar no. 87406)
                                        rachel@kaufmanpa.com
                                        KAUFMAN P.A.
                                        400 NW 26th Street
                                        Miami, FL 33127
                                        Telephone: (305) 469-5881

                                        *Counsel for Plaintiffs and*
                                        *all others similarly situated*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 21, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*